UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MARK A. WARSCO, TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:08-CV-5-TS |
| | ) | |
| BECTON DICKINSON AND COMPANY, | ) | |
| NOVA BIOMEDICAL COMPANY, | ) | |
| MEDTRONIC, INC., and MINIMED, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is a Motion to Dismiss [DE 46], filed on December 29, 2008, by Defendants Medtronic, Inc., and Medtronic Minimed, Inc. (the Medtronic Defendants). The Medtronic Defendants argue that the claims against them in the Plaintiff's Amended Complaint are untimely.

**BACKGROUND**

On November 6, 2007, the Plaintiff—Mark W. Warsco, the Trustee for the bankruptcy estate of Donald Frederick Lamar and Jan Elaine Lamar—sued Becton Dickinson and Company (Becton) and Nova Biomedical Corporation (Nova) in Allen Superior Court.

The Plaintiff's Complaint makes the following allegations. Donald Lamar, a diabetic, purchased a Paradigm 512 blood glucose monitor in September 2003. (Compl. ¶¶ 14–15.) The monitor, made by Defendant Becton, was recalled in March 2004. (*Id.* at ¶¶ 15, 17.) Lamar shortly thereafter received a replacement, which was manufactured by Defendant Nova and distributed and sold by Defendant Becton. (*Id.* at ¶ 18.) Lamar's health began deteriorating. He

suffered a stroke in August 2004, and went to the emergency room twice in 2005 for hypoglycemic reactions. (*Id.* at ¶¶ 19–20.) In November 2005, Lamar discovered that the monitor was defective and did not accurately report blood sugar levels. (*Id.* at ¶ 21.)

Lamar experienced continuing medical problems after the stroke, including difficulty walking and moving his limbs, swelling of the legs after walking any distance or climbing stairs, difficulty concentrating, and vision problems in his right eye. (*Id.* at ¶ 30.) These problems have prevented him from working; resulted in medical expenses of at least $232,699; caused pain, distress, diminished quality of life, and loss of enjoyment of life; and contributed to forcing the Lamars to file for bankruptcy. (*Id.* at ¶¶ 30–33.) Lamar and his wife Jan Lamar have also suffered "a loss[] of conjugal and other elements of marital companionship." (*Id.* at ¶ 35.)

The Complaint has four counts: strict liability, negligence, loss of consortium (for Jan Lamar only), and breach of the implied warranties of merchantability and fitness. Warsco, the bankruptcy trustee, brought this action to recover property of the bankruptcy estate for the Chapter 7 bankruptcy case, *In re: Donald Frederick Lamar and Jan Elaine Lamar*, *Debtors*, No. 05-14727 (N.D. Ind.) (filed Sept. 14, 2005). (Compl. ¶¶ 5–6.)

On December 28, Defendant Nova filed an Answer. On January 7, 2008, Defendant Nova removed the case to federal court on the basis of diversity jurisdiction. On March 5, 2008, the Plaintiff filed a Motion to Amend Complaint [DE 12], seeking leave to add the Medtronic Defendants. The Defendants did not file any response to that Motion, and on April 1, the Court granted the Motion. (*See* Apr. 1, 2008, Order, DE 16.) The Amended Complaint [DE 17] is substantially the same as the original Complaint except that it states that the Medtronic Defendants manufactured, marketed, distributed, and sold blood sugar monitors along with the

other Defendants.

On December 29, 2008, the Medtronic Defendants filed their Motion to Dismiss [DE 46] along with their Memorandum in Support [DE 46-2.] On April 21,[1] the Plaintiff filed his Brief in Opposition [DE 58]. On May 6,[2] the Medtronic Defendants filed their Reply Brief [DE 66].

**JURISDICTION AND STANDARD OF REVIEW**

This Court has subject-matter jurisdiction over this case through diversity jurisdiction. 28 U.S.C. § 1332. Warsco and the Lamars are citizens of Indiana. (Am. Compl. ¶¶ 1–2, 4.) Defendant Becton is a citizen of New Jersey because it is incorporated and has its principal place of business there. (*Id.* at ¶¶ 8–9.) Defendant Nova is a citizen of Massachusetts because it is incorporated and has its principal place of business there. (*Id.* at ¶¶ 14–15.) Defendant Minimed is a citizen of Minnesota and California because it is incorporated in Minnesota and its principal place of business is in California. (*Id.* at ¶¶ 18–19.) Defendant Medtronic is a citizen of Minnesota because it is incorporated and has its principal place of business there. (*Id.* at ¶¶ 20–21.) Therefore, there is complete diversity of citizenship. The amount in controversy—at least $232,699—more than "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a).

If, when viewed in a light most favorable to the plaintiff, a complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. Fed. R. Civ. P. 12(b)(6); *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). The Supreme Court

---

[1] The Plaintiff twice had sought and received leave of the Court to file the response brief after the normal fifteen-day time period.

[2] The Medtronic Defendants sought and received leave of the Court to file the reply brief after the normal seven-day time period.

has interpreted that language to impose two easy-to-clear hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the complaint allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility "above the speculative level," or the plaintiff will plead himself out of court. *Id.*

> It is, of course, "irregular" to dismiss a claim as untimely under Rule 12(b)(6). Under Federal Rule of Civil Procedure 8, a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations. As a result, a federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. However, . . . dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense.

*Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citations omitted). When the "allegations in the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations," it is not premature to dismiss a complaint that does not anticipate an affirmative defense. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *see also Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (noting that even though a plaintiff is not required to negate a statute of limitations affirmative defense in his complaint, "if he pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court").

Rule 12(d) states that a court must treat a Rule 12(b)(6) motion as a motion for summary judgment if "matters outside the pleadings are presented to *and not excluded by the court*." Fed.

R. Civ. P. 12(d) (emphasis added). The Plaintiff presented information outside the pleadings in the form of exhibits attached to his Response, but the Court has excluded that material and not considered it for purposes of this 12(b)(6) Motion. *See Marques v. Fed. Reserve Bank of Chicago*, 296 F.3d 1014, 1017 (7th Cir. 2002) (stating that a court has discretion to consider attached materials and convert a 12(b)(6) motion into a summary judgment motion). Despite the language of Rule 12(d), the court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). The only factual information the Court has taken into account for purposes of this ruling is the pleadings and dates of the filings in this case.

## ANALYSIS

Under the familiar rule of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the substantive law of the state in which it sits. *See Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). Statutes of limitations are considered substantive matters for purposes of the *Erie* doctrine. *Guaranty Trust v. York*, 326 U.S. 99, 110 (1945). Moreover, "[l]ike the statute of limitations itself, rules that are an 'integral part of the statute of limitations,' such as tolling and equitable estoppel, are treated as substantive for purposes of the *Erie* doctrine." *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–53 (1980)). Accordingly, the Court will use the Indiana Rules of Trial Procedure rather than the Federal Rules of Civil Procedure to determine if the Amended Complaint is timely.

The parties do not dispute that, in Indiana, a product liability action in which the theory

5

of liability is negligence or strict liability in tort, must be brought within two years "after the cause of action accrues." Ind. Code § 34-20-3-1(b)(1). However, the statute does not define "accrues." The "general rule" is that a cause of action accrues "when resultant damage of a negligent act is ascertainable or by due diligence could be ascertained." *Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989) (quoting *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 86 (Ind. 1985)). Indiana has adopted the discovery rule for the accrual of claims arising out of tort. *See Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 842–43 (Ind. 1992) (extending discovery rule to all tort claims).

In this case, the parties do not dispute that Lamar discovered the alleged problem, the defective tests, on November 22, 2005. Accordingly, the addition of the Medtronic Defendants to the lawsuit in April 2008 was several months after the two-year cause of action accrued. The Plaintiff argues that the Amended Complaint naming the Medtronic Defendants is nonetheless timely because it relates back to the original Complaint.

**A. Relation Back**

Whether a claim relates back is governed in this case by Indiana Trial Rule 15(C), which has several requirements. First, the claim in the amended complaint must have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Ind. Trial R. 15(C). Second, within 120 days of the start of the lawsuit, the new party "must have received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits." Ind. Trial R. 15(C)(1). Third, also within 120 days of the start of the lawsuit, the new party "knew or should have known that but for a mistake concerning the

6

identity of the proper party, the action would have been brought against him." Ind. Trial R. 15(C)(2). The second and third requirements are the "notice and knowledge" requirements. *See Porter County Sheriff Dep't v. Guzorek*, 857 N.E.2d 363, 368 (Ind. 2006); *Foor v. Town of Hebron*, 742 N.E.2d 545, 551 (Ind. Ct. App. 2001); *Gulley v. Winter*, 686 N.E.2d 176, 180 (Ind. Ct. App. 1997); *Fifer v. Soretore-Dodds*, 680 N.E.2d 889, 891 (Ind. Ct. App. 1997).

> [I]n order for an amendment of a complaint to relate back under Trial Rule 15(C), no later than 120 days after the complaint is filed a defendant must receive notice of the pendency of the action and be aware that, but for a mistake, that defendant would have been named in the original complaint.

*Guzorek*, 857 N.E.2d at 368. The notice must be such that the party named in the amended pleadings received either actual or constructive notice of the institution of the legal action. *Id.* It is not sufficient that the party is on notice that an injury has occurred or that the plaintiff has retained counsel. *Id.* at 368–69 (finding that tort claim notice that informed the defendant of an accident but did not advise that a lawsuit was filed did not satisfy Trial Rule 15(C)).

The Medtronic Defendants rightly do not contest that the Plaintiff's claims against the Medtronic Defendants arose out of the same transaction or occurrence—the allegedly defective blood sugar test—as the Plaintiff's claims against the other Defendants. The first requirement of Rule 15(C) is satisfied, and the Court will now examine the notice requirement.

March 6, 2008, the date that the Plaintiff filed the Motion to Amend Complaint (and attached the proposed Amended Complaint), is 120 days from the commencement of the lawsuit. The Plaintiff argues that the Medtronic Defendants received constructive, rather than actual[3],

---

[3] The Plaintiff rightly does not argue that there was actual notice because there is nothing in the record showing that the Medtronic Defendants received actual notice of the lawsuit on or before the date when the Motion to Amend was filed. The certificate of service at the end of the Motion only lists counsel for Defendant Nova (counsel for Defendant Becton has not yet entered an appearance at that time).

notice of the lawsuit at that time through their identity of interests with the other Defendants. (Pl. Resp. 6–7.)

> An identity of interest may permit notice to be imputed to the added party when the original and added party are so closely related in business or other activities that it is fair to presume that the added party learned of the institution of the action shortly after it was commenced.

*Guzorek*, 857 N.E.2d at 369 (brackets and internal quotations omitted), quoted in Pl. Resp. 6.

In *Honda Motor Co., Ltd. v. Parks*, 485 N.E.2d 644 (Ind. Ct. App. 1985), the court found an identity of interest between American Honda Motor Company, Inc., the initial defendant, and Japanese Honda, the proper defendant added later, because the former was a wholly owned subsidiary of the latter and the evidence indicated that they were "for all practical purposes, one and the same." *Id.* at 651. The court relied on a similar case, *Creighton v. Caylor-Nickel Hosp., Inc.*, 484 N.E.2d 1303 (Ind. Ct. App. 1985).

In that case, the plaintiff sought to add a hospital as a defendant after wrongly naming a clinic that was housed in the hospital. The court noted that the two were "separate legal entities" but shared the same risk manager, the Caylor-Nickel name, the same building, and the same medical record forms, which "give the distinct impression that the Clinic and the Hospital were a single entity." *Creighton*, 484 N.E.2d at 1307. "Even the Authority's personnel were confused about the separate identities of the Caylor-Nickel facilities." *Id.* This was enough to find an identity of interests between the two defendants, allowing the amended complaint naming the correct defendant to relate back to the original complaint.

In another Indiana case, an amended complaint related back through an identity of interests between the first defendants, individual farm owners, and the second defendant, a corporation carrying on the same farm business. *Waldron v. Wilson*, 532 N.E.2d 1154 (Ind.

8

1989). The first defendants were employees and sole shareholders of the second defendant and were the only company officials for the second defendant. *Id.* at 1155–56.

Other cases show when there is not an identity of interests between two corporate entities. In *ServiceMaster Diversified Health Servs., L.P. v. Wiley*, 790 N.E.2d 1056 (Ind. Ct. App. 2003), the plaintiff sued the owner of a healthcare center that had terminated his employment. Several years later, the plaintiff sought to add ServiceMaster Diversified Health Services, L.P., known as BEP. BEP provided management services to the healthcare center, running its day-to-day operations and coordinating "all legal matters and proceedings." *Id.* at 1058. The court contrasted its case with *Parks*, noting that BEP and the first-named defendant were "separate, distinct entities" with the only other connections being the plaintiff's unfounded presumptions. *Id.* at 1060 ("[W]e cannot say that BEP would 'automatically' be expected to anticipate being a party in a lawsuit to which it is not named."). In *Hutchison v. Old Indiana Ltd. Liability Co.*, 714 N.E.2d 789 (Ind. Ct. App. 1999), a lawsuit stemming from injuries sustained during a roller coaster ride, the court ruled there was no identity of interests between the first wrongly named defendant and second correct but untimely named defendant because they "are two separate, unrelated, and distinct corporate entities." *Id.* at 793.

In this case, the Plaintiff's basis for asserting an identity of interest between the Medtronic Defendants and the others is his allegation that they partnered in the design, development, and distribution of the test. (Pl. Resp. 7 (citing Pl. Am. Compl. ¶¶ 12, 26, 35.)) The Plaintiff argues that based on "their collaborative effort . . . it is fair to presume that the added party learned of the institution of the action shortly after it was commenced." *Id.* The Plaintiff's allegations, taken as true for purposes of this Motion to Dismiss, do not assert the kind of

9

relationship between the Medtronic Defendants and the other Defendants that would qualify as an identity of interests. The Medtronic companies are not wholly owned subsidiaries of Becton or Nova, *Parks*, 485 N.E.2d at 651, and there is no allegation that the companies share offices, company names, or forms, *Creighton*, 484 N.E.2d at 1307. The assertions in this case—that the companies collaborated on the design, development and distribution of the test—do not even allege as close a relationship as existed in *Wiley*, where the court said there was not an identity of interest even though the later-added defendant provided on-site management and coordinated legal affairs for the first defendant. *Wiley*, 790 N.E.2d at 1058–60. The Plaintiff argues that "it is fair to presume that the added party learned of the institution of the action shortly after it was commenced," (Pl. Resp. 7), but *Wiley* rejected such reliance on presumptions even though there was a closer relationship between the two corporate entities in that case than there is alleged to be in this case. *Wiley*, 790 N.E.2d at 1060. Without this identity of interests, there is no basis to believe that the Medtronic Defendants had constructive notice of the lawsuit against Defendants Becton and Nova. As a result, the strict liability and negligence claims against the Medtronic Defendants will be dismissed.

B.    **Equitable Tolling**

The Plaintiff also argues that the doctrine of equitable tolling applies and should allow the Plaintiff "to avoid the bar of the statute of limitations because despite all due diligence he was unable to obtain vital information bearing on the existence of his claim, that is[,] the identity of the manufacturer of the Monitor." (Pl. Resp. 10.) The Plaintiff states that he named Becton and Nova as Defendants because "the Monitor itself clearly indicates" that they were the

10

manufacturers. (*Id.* at 9.) Then, Nova in its Answer [DE 6] mentioned that the Medtronic Defendants made and/or sold the test. (*Id.* (citing Nova Answer ¶ 18)). The Plaintiff further asserts that around May 5, 2008, counsel for Medtronic contacted Plaintiff's counsel. (Pl. Resp. 10.)

The Plaintiff's reliance on the federal tolling standard is misplaced. It is the Indiana standard that applies because federal courts in diversity jurisdiction cases apply the law of the forum in which they sit. *Land*, 272 F.3d at 516. The Indiana standard is different than the federal standard and it does not toll the statute of limitations in this case. Also, even if the federal standard did apply, the Defendants are correct that it would be of no avail to the Plaintiff.

Both Indiana courts and the Seventh Circuit have recognized that Indiana's equitable tolling rule is different from that of the federal courts. *See Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, at 239 n.9 (Ind. Ct. App. 1998) ("As noted in *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993), Indiana has yet to recognize equitable tolling as it is defined under federal law. However, *Torres* [*v. Parkview Foods*, 468 N.E.d2d 580 (Ind. Ct. App. 1984)] recognizes a form of equitable tolling." (citation and internal quotations omitted)); *Hondo, Inc. v. Sterling*, 21 F.3d 775, 780 & n.6 (7th Cir. 1994) (noting that there is a difference between the two systems); *Heck v. Humphrey*, 997 F.2d 355, 357–58 (7th Cir. 1993) (same).[4]

There is very little Indiana caselaw on equitable tolling. *Wabash Grain* states that *Torres* is the "leading case on the doctrine of equitable tolling." *Wabash Grain*, 700 N.E.2d at 239. The

---

[4] *See also Brademas v. Ind. Hous. Fin. Auth.*, No. IP 00-1974-C-M/L, 2003 WL 1877413, at *11 (S.D. Ind. Mar. 27, 2003) (stating that "Indiana does not recognize equitable tolling as it is defined under federal law," stating that *Torres'* view "is the only form of equitable tolling recognized in Indiana," and stating that the *Torres* equitable tolling rule had no applicability to the claims under 42 U.S.C. § 1983); *Young v Harmon*, No. 1:01-CV-440, 2003 WL 21918759, at *2 n.7 (N.D. Ind. May 13, 2003) (noting the same difference and stating that the plaintiff's equitable tolling argument was "meritless").

equitable tolling holding of *Torres* is

> that when in good faith a plaintiff brings an action in federal court within the statute of limitations, but it fails for lack of diversity jurisdiction, the statute of limitations is tolled with the filing of the suit for purposes of determining whether a subsequent state action involving the same parties and the same claims is brought within the statute of limitations.

*Torres*, 468 N.E.2d at 583. This rule is inapplicable to this case. In *Burnett v. Villaneuve*, 685 N.E.2d 1103 (Ind. Ct. App. 1997), the court found that two provisions of the probate code—Ind. Code §§ 29-1-7-7 & 14-1(a)—were equitably tolled under certain circumstances, but that also is inapplicable to the present case because there is no probate issue here. However, *Burnett* cited and quoted *Donnella v. Crady*, 185 N.E.2d 623, 625 (Ind. Ct. App. 1962), for the proposition that "[e]quity will estop a party from setting up the statute of limitations as a defense in an action where such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law." *Burnett*, 685 N.E.2d at 1110–11 (quoting *Donnella*, 185 N.E.2d at 625). Such is the extent of equitable tolling law in Indiana for this Court to apply here. The language from *Donnella* does not save the Plaintiff. There is no allegation in the Plaintiff's Amended Complaint or Response that any of the Defendants engaged in fraud or misconduct to prevent the Plaintiff from learning that the Medtronic Defendants were involved in the manufacturing, marketing, and distribution of the monitor.

Even the federal standard cited by the Plaintiff would not equitably toll the Plaintiff's claims against the Medtronic Defendants. The federal version of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*,

12

920 F.2d 446, 451 (7th Cir. 1990). "However, if a reasonable person in the plaintiff's position would have been aware within the limitations period of the possibility that its rights have been violated, then equity does not toll the limitations period." *Chapple v. Nat'l Starch and Chem. Co. and Oil*, 178 F.3d 501, 506 (7th Cir. 1999). "[T]olling requires a showing that the plaintiff exercised continuous diligence and brought the suit as soon as it was practicable." *Id.* "[T]o be given the benefit of the doctrine he must be diligent in seeking out that identity and must sue promptly once he has learned it." *Springman v. AIG Marketing, Inc.*, 523 F.3d 685, 689 (7th Cir. 2008).

The Court cannot say that such continuous diligence was exercised in this case, and that the Plaintiff sued as soon as he learned the identity of the Medtronic Defendants. The Plaintiff states that he received in 2004 a document stating that MiniMed Distribution Center sold the blood sugar test. (Pl. Resp. 5.) The Plaintiff also notes that the owner's guide for one of the monitors supplied to the Plaintiff lists Medtronic MiniMed on the cover and states that Medtronic Minimed developed the device with Becton. (*Id.*) The Plaintiff admits that all of this information was in the Plaintiff's possession prior to the commencement of the lawsuit. The continuous diligence requirement means that the Plaintiff should have noted the significance of this information and timely named the Medtronic Defendants. As a result, even if the federal equitable tolling doctrine did apply in this case, it would not be of help to the Plaintiff.

## C. The Implied Warranty Claims

The Medtronic Defendants argue that the Plaintiff's implied warranty claims, which are made under Indiana's Uniform Commercial Code, fail for different reasons, namely, because the

13

Plaintiff do not allege a "contract for sale" or sale itself between the Defendants and the Plaintiff. "Notably absent from plaintiff's factual assertions is any allegation that there was a sale of the goods at issue from Medtronic or Minimed to plaintiff." (Defs. Mem. 6.) "Absent a sale, there can be no implied warranty," (*id.*) and the Plaintiff's claims based on implied warranty of merchantability, Ind. Code § 26-1-2-314, and implied warranty of fitness, Ind. Code § 26-1-2-315, do not state a claim upon which relief can be based.

The Plaintiff argues that the Amended Complaint does indeed allege a sale and/or contract for sale between the Plaintiff and the Medtronic Defendants. The Plaintiff's argument is well taken. The Amended Complaint states that "Don Lamar received as a replacement from BD, and began using, a Paradigm Link Blood Glucose Monitor, serial number 1658152 (the "Monitor"), manufactured by Nova and distributed *and sold by* BD, *Medtronic, and MiniMed*." (Pl. Am. Compl. ¶ 35 (emphasis added)). It also states that the Medtronic Defendants "designed, developed, manufactured, marketed, sold, and distributed the Monitor." (*Id.* ¶¶ 65–66.) The Plaintiff notes that the Amended Complaint also elsewhere refers to the Medtronic Defendants as the seller of the Monitor. (Am. Compl. ¶¶ 116–17, 132–33, 176–77, 180–81, 184–85 (cited in Pl. Brief in Opp. 10)). For instance, the Amended Complaint states that Medtronic and Minimed were "aware of the problems with and defects in blood glucose monitors" they sold, "as evidenced by . . . *the Paradigm 512 blood glucose monitor that Don Lamar had purchased from Minimed [and Medtronic[5]]* in September 2003." (*Id.* at ¶¶ 132 & 133 (emphasis added)).

The Defendants' brief argument on this point seems to be that the Plaintiff should have alleged more specific details about a contract of sale between the Medtronic Defendants and the

---

[5] The Amended Complaint lists Minimed in Paragraph 132 and Medtronic in Paragraph 133; otherwise, the two paragraphs are identical.

14

Plaintiff, and/or that the Plaintiff merely received (but did not purchase) the test after the recall. Such a narrow reading omits the parts of the Amended Complaint that clearly allege a sale from the Medtronic Defendants to the Plaintiff, as explained above. The Amended Complaint must be read as a whole and in its entirety.

Furthermore, the Defendants' Memorandum on this point only contains one citation to legal authority, a 1953 Indiana Supreme Court case, which does little to support the argument. The Defendants' Reply brief addressing this issue does not cite any legal authority. On the other hand, a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ind. Code § 26-1-2-204. At this stage of the proceedings and for purposes of this Motion, the Amended Complaint sufficiently states "conduct" that shows a sale and/or a contract for sale. In the absence of legal authority to the contrary from the Defendants, the Court cannot at this time conclude that the Plaintiffs have improperly stated their implied warranty claims. Because these claims have a four-year statute of limitations, and because they were filed against the Defendants within that time frame, the Plaintiff may proceed with these claims.

**D.     Loss of Consortium Claim**

The Defendants argue that the loss of consortium claim by Jan Lamar must fail because her husband's tort claims fail and because a loss of consortium claim is derivative of the injured spouse's personal injury claim. (Defs. Mem. 6.) The Plaintiff agrees with the legal principle that loss of consortium claims are derivative of the personal injury claims of the Plaintiff but argues that the tort claims are timely and proper, making the loss of consortium claim timely and

15

proper. (Pl. Resp. 11.) The Defendants' argument on this point is well taken. "The loss of consortium claim has been described as a claim derivative of the injured spouse's personal injury claim. By this we mean that if the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it." *Durham v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001) (citation omitted). In this case, because Don Lamar's personal injury claims—strict liability (count one) and negligence (count two)—must be dismissed as untimely, so too must Jan Lamar's loss of consortium claim. *Durham*, 745 N.E.2d at 764.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss. Counts One, Two, and Three of the Plaintiff's Amended Complaint are dismissed. The Plaintiff may proceed with Count Four of the Amended Complaint against the Medtronic Defendants.

So ORDERED on June 30, 2009.

       s/ Theresa L. Springmann
       THERESA L. SPRINGMANN
       UNITED STATES DISTRICT COURT